PAUL L. REIN, Esq. (SBN 43053)
AARON M. CLEFTON, Esq. (SBN 318680)
REIN & CLEFTON, Attorneys at Law
200 Lakeside Drive, Suite A
Oakland, CA 94612
Telephone: 510/832-5001
Facsimile: 510/832-4787
info@reincleftonlaw.com

Attorneys for Plaintiff
JESSICA KRAMER

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| JESSICA KRAMER<br><br>    Plaintiff,<br><br>v.<br><br>RVN, INC. dba HYLAND INN,<br><br>    Defendant. | CASE NO. <u>'22CV642  L     WVG</u><br><u>Civil Rights</u><br><br>COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES:<br><br>1. Violation of the California Disabled Persons Act (Cal. Civil Code § 54 *et seq.*)<br><br>2. Violation of the California Unruh Act (Cal. Civil Code §§ 51 and 52)<br><br>3. Violations of Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*)<br><br><u>DEMAND FOR JURY TRIAL</u> |
|---|---|

Plaintiff JESSICA KRAMER complains of Defendant RVN, INC. dba HYLAND INN, and alleges as follows:

1.     **INTRODUCTION:** On August 30, 2021, Defendant refused to allow disabled Plaintiff Jessica Kramer to stay at its motel with her service dog Lucious. Defendant did so despite Plaintiff's attempts to persuade Defendant otherwise by citing the ADA to them. Nonetheless, after hearing what the law requires from Plaintiff, Defendant still denied her access to staying at the hotel solely because she uses a service dog. This lawsuit seeks injunctive relief and damages against the

owners and operators of the Hyland Inn for denying full and equal access to Plaintiff Jessica Kramer, a disabled person who uses a service dog.

2. Plaintiff both volunteers for and participates in a housing program which provide vouchers for overnight stays at the Hyland Inn for housing insecure individuals. She intends to return to the Hyland Inn to visit people who are staying there and also may need to stay there herself in the future, but she cannot do so until the policies of the motel are made accessible to disabled individuals who use service dogs, including revision of its service dog policies and necessary employee training and/or re-training. She has brought this lawsuit to force Defendant to change its discriminatory and illegal policies and compensate her for refusing to allow her to enter the motel because she is a disabled person who needs the assistance of her qualified service dog. Plaintiff seeks an injunction to protect the rights of all disabled persons, including Plaintiff, when accompanied by a qualified service dog at the Hyland Inn.

3. **JURISDICTION:** This Court has jurisdiction of this action pursuant to 28 USC sections 1331 and 1343. This Court has jurisdiction over the claims brought under California law pursuant to 28 U.S.C. § 1367.

4. **VENUE:** Venue is proper in this court pursuant to 28 USC section 1391(b) and is proper because the real property which is the subject of this action is located in this district and that Plaintiff's causes of action arose in this district.

5. **PARTIES:** Plaintiff Jessica Kramer is a "qualified" disabled person. She suffers from recurrent viral meningitis which causes seizures, post-traumatic stress disorder (PTSD), anxiety, and panic disorder. Plaintiff relies upon her service dog, a mixed bulldog named "Lucious," to assist her with certain tasks including pawing at Plaintiff to get her attention when she is exhibiting symptoms of stress and panic, interrupting certain behaviors that can lead to seizures, pinning Plaintiff's shoulders and head down during a seizure to prevent head injuries, and

staying with Plaintiff in an emergency.

6. Plaintiff previously went through professional service dog training with her prior service dog. After her previous service dog passed, she acquired Lucious. Lucious has been individually trained by Plaintiff to be service dog based on her prior experience of going through professional training. Plaintiff continues to reinforce the training with Lucious daily. Plaintiff is a qualified person with a disability as defined under federal and state law. 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(1).

7. Defendant RVN, INC. dba HYLAND INN, is and was at all times relevant to this Complaint the owner, operator, lessor and/or lessee of the subject business, property and building located at 3570 Pio Pico Drive, Carlsbad, California known as the Hyland Inn.

8. Hyland Inn is a place of "public accommodation" and a "business establishment" subject to the requirements *inter alia* of multiple categories of 42 U.S.C. section 12181(7) of the Americans with Disabilities Act of 1990, of California Civil Code sections 51 *et seq.*, and of California Civil Code sections 54 *et seq*.

9. **FACTUAL STATEMENT:** Plaintiff Jessica Kramer has been working with her service dog Lucious for over four years. Lucious is a bulldog mix who was individually trained to be a service dog by Plaintiff. Plaintiff has also trained and continues to train Lucious to serve her specific needs throughout their relationship. Lucious is specifically trained to assist Plaintiff with controlling her symptoms of panic by getting her attention when at the onset of symptoms, interrupting certain behaviors that can lead to seizures, pinning Plaintiff's shoulders and head down during a seizure to prevent head injuries, and staying with Plaintiff in an emergency.

10. Lucious is a working dog; he is not a pet. Plaintiff and Lucious have trained extensively together, and they supplement that training daily. Plaintiff takes

Lucious everywhere with her in public. It is important they stay together at all times because (a) Lucious provides important services for Plaintiff; and (b) it is part of the training and bonding requirement that they be together constantly to maintain their bond. Where Plaintiff goes, Lucious goes. Below is a photograph of Lucious as he looked at the time, he and Plaintiff were denied access at the Hyland Inn:



11. Plaintiff was planning to move into her new apartment on August 30, 2021. However, the property owner informed Plaintiff that it needed a couple of extra days to get the apartment ready for her to move-in. Her landlord provided Plaintiff with a voucher for her to stay at the Hyland Inn for the nights of August 30 and 31, 2021.

12. Plaintiff was informed that she could pick up her voucher for the Hyland Inn at the Community Resource Center. She picked up her voucher there, and she was informed that the Hyland Inn was expecting her.

13. Plaintiff asked her friend to escort her to the Hyland Inn to ensure that everything went smoothly with the voucher. She drove in her car with Lucious, and her friend drove his own vehicle. They arrived at the Hyland Inn in the early evening, and they both pulled their vehicles up to the front office area. Plaintiff left

Lucious in her car momentarily and approached the office window to check into the Hyland Inn.

14. Plaintiff was greeted by Defendant's employee at the check in window, and she slid her voucher through the opening at the bottom of the window so that the employee could begin the check in process. The employee took the voucher and left the window for a moment. When the employee returned, he asked Plaintiff if that was her dog, pointing to Lucious in her car. Plaintiff responded that Lucious is her medically required seizure service dog. The employee then said, "No, no, no, no, they did not tell me that you had a dog with you." "They did not pay a pet fee."

15. Plaintiff again explained that Lucious is a service dog not a pet, but the employee would not listen to her. He pointed to a sign that informed guests that there was a $250 fee for having guests in their room. Plaintiff clarified that Lucious is he medically necessary service dog, and thus, any pet fee does not apply to him. The employee continued to argue with her, and he told her that she would have to pay the $250 pet fee for Lucious.

16. Plaintiff's seizures are often triggered by stressful situations, and she could tell that her stress level was increasing rapidly by arguing with the employee. Plaintiff took a step back and asked Defendant's employee if he could look up the law surrounding service animals on ADA.gov. The employee refused to look up the law or engage in any discussions of the ADA. He continued to tell her that she would have to pay the $250 fee or leave.

17. Plaintiff told Defendant's employee that she did not have the money to pay the pet fee, nor did she have any other place to go. Defendant's employee was clear that he did not care where she went but that she could not stay at the Hyland Inn with Lucious if she did not pay the $250 pet fee. At the end of the conversation, Defendant's employee swore at Plaintiff and told her to leave.

18. Plaintiff returned to her car sobbing and feeling terrified of having

1  nowhere else to go.  Her friend came over to help and support her.  He and Lucious
2  helped her calm down enough so that she could drive her vehicle to a safe place.
3  Her friend then assisted her in securing a different safe place to sleep for the two
4  nights that she was supposed to stay at the Hyland Inn, but it took them over three
5  hours to find alternative accommodations.  The experience left Plaintiff emotionally
6  drained, depressed, and embarrassed that she had to rely on her friend on such short
7  notice and under such dire circumstances.

8      19.  Following the incident, Plaintiff called the Carlsbad Police Department
9  to report the incident.  The police officer produced a report about the incident, and
10 he transmitted it to the District Attorney for potential prosecution.

11     20.  Plaintiff volunteers to help the vulnerable homeless population in
12 Carlsbad.  Since the Hyland Inn participates in the voucher program which allows
13 homeless individuals to stay at the motel, Plaintiff must go to the Hyland Inn to
14 visit and assist people periodically.

15     21.  On October 15, 2021, Plaintiff had to go to the Hyland Inn to visit an
16 elderly homeless man who was staying there so that he could sign some papers.  On
17 this visit to the Hyland Inn, Plaintiff made a conscious decision not to bring
18 Lucious with her, despite the risks associate with them being separated, because she
19 did not want to cause any problems for the gentleman she was visiting.

20     22.  Despite this abundance of caution, when she was standing outside of
21 the gentleman's room, she heard Defendant's employee yelling at her, "Your dog
22 can't be here!" and "Your dog better not be in that room."  Then, Defendant's
23 employee pushed passed Plaintiff and entered the gentleman's room to see if
24 Lucious was inside.  Plaintiff told Defendant's employee that her dog was not
25 present and explained that she was only at the Hyland Inn to assist the man.
26 Defendant's employee then told Plaintiff that neither she nor her dog were welcome
27 on the Hyland Inn property.  In retaliation for her asserting her rights previously,
28 and solely because Plaintiff uses a service dog, the employee threatened to kick the

man out of the room that Plaintiff was trying to assist if she did not leave immediately.  He did this to coerce and punish Plaintiff for her use of a service dog, even when she did not have one with her.

23.     Even though Lucious was not with her, Plaintiff again tried to explain that Lucious is a service dog and is therefore legally allowed to be with her wherever the general public is allowed at a public accommodation.  Defendant's employee told her he did not care, she needed to leave.  At that point, Plaintiff left the Hyland Inn because she did not want to cause any issues for the gentleman she was visiting.

24.     Plaintiff waited until the gentleman had been moved into a different housing situation, and then she called the Carlsbad Police Department to file a second incident report.  Plaintiff was worried that the gentleman would be kicked out of his room at the Hyland Inn if she contacted the police about the incident right away.

25.     Plaintiff wishes to return to the Hyland Inn both to stay there and to assist other people who are staying there, but only *after* Defendant's have implemented proper service animal policies and training of its staff.  Plaintiff is deterred from returning to the motel until these policies and training are in place.

**FIRST CAUSE OF ACTION:**
**DAMAGES AND INJUNCTIVE RELIEF**
**FOR DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC FACILITIES IN A PUBLIC ACCOMMODATION**
**(Civil Code §§ 54 *et seq.*)**

26.     Plaintiff re-pleads and incorporates by reference, as if fully set forth hereafter, the factual allegations contained in Paragraphs 1 through 25 of this Complaint and all paragraphs of the third cause of action, as plead infra, incorporates them herein as if separately re-pleaded.

27.     Under the California Disabled Persons Act (CDPA), people with disabilities are entitled to the "full and free use of . . . public buildings, . . . public facilities, and other public places."  Civil Code § 54(a).

28. Civil Code section 54.1(a)(1) further guarantees the right of "full and equal access" by persons with disabilities to "accommodations, advantages, facilities . . . hotels, lodging places of accommodation, amusement or resort, or other places to which the general public is invited." Civil Code § 54.1(c) also specifies that, "individuals with a disability and persons authorized to train service dogs for individuals with a disability, may take dogs, for the purpose of training them as guide dogs, signal dogs, or service dogs in any of the places specified in subdivisions (a) and (b)."

29. Civil Code section 54.2(a) specifically protects the right of "every individual with a disability" "to be accompanied by a guide dog, signal dog, or service dog, especially trained for the purpose, in any of the places specified in Section 54.1."

30. Civil Code section 54.3(b) makes liable "Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2." This section also specifies that, "'[I]nterfere,' for purposes of this section, includes, but is not limited to, preventing or causing the prevention of a guide dog, signal dog, or service dog from carrying out its functions in assisting a disabled person."

31. Defendant is also in violation of California Penal Code section 365.5(b) which states:

> No blind person, deaf person, or disabled person and his or her specially trained guide dog, signal dog, or service dog shall be denied admittance to accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices, telephone facilities, adoption agencies, private schools, hotels, lodging places, places of public accommodation, amusement or resort, and other places to which the general public is invited within this state because of that guide dog, signal dog, or service dog.

32. The Hyland Inn is a public accommodation within the meaning of the CDPA. On information and belief, Defendant is the owners, operators, lessors or

lessees of the public accommodation.

33. Defendant made the decision to knowingly and willfully exclude Plaintiff and her service dog from its public accommodation and thereby deny Plaintiff her right of entrance into its place of business with her service dog. As a result of that decision Plaintiff has faced the continuing discrimination of being barred from entering this large public accommodation and place of business based upon Defendant's illegal prohibition of her legally protected use of her service dog. Plaintiff has continued to suffer denial of access to these facilities, and faces the prospect of unpleasant and discriminatory treatment should she attempt to return to these facilities. Plaintiff is unable to return to they Hyland Inn until she receives the protection of this Court's injunctive relief, and she has continued to suffer discrimination on a daily basis since October 21, 2021, all to her statutory damages pursuant to California Civil Code §§ 54.1, 54.2, and 54.3 and California Penal Code section 365.5.

34. **INJUNCTIVE RELIEF:** Plaintiff seeks injunctive relief to prohibit the acts and omissions of Defendant as complained of herein which are continuing on a day-to-day basis and which have the effect of wrongfully excluding Plaintiff and other members of the public who are disabled, who require the assistance of service animals, from full and equal access to these public facilities. Such acts and omissions are the cause of humiliation and mental and emotional suffering of Plaintiff in that these actions continue to treat Plaintiff as an inferior and second-class citizen and serve to discriminate against her on the sole basis that she is a person with disabilities who requires the assistance of a service animal.

35. Plaintiff wishes to return to patronize the Hyland Inn but is deterred from returning to use these facilities, because the lack of access and the significant policy barriers will foreseeably cause her further difficulty, discomfort and embarrassment, and Plaintiff is unable, so long as such acts and omissions of Defendant continue, to achieve equal access to and use of these public facilities.

1  Therefore, Plaintiff cannot return to patronize the Hyland Inn and its facilities and
2  is deterred from further patronage until these facilities are made properly accessible
3  for disabled persons, including Plaintiff and other disabled individuals who require
4  the assistance of a service animal.
5       36.   The acts of Defendant have proximately caused and will continue to
6  cause irreparable injury to Plaintiff if not enjoined by this Court.  Plaintiff seeks
7  injunctive relief as to Defendant's inaccessible policies.   As to the Defendant that
8  currently own, operate, and/or lease (from or to) the subject premises, Plaintiff
9  seeks preliminary and permanent injunctive relief to enjoin and eliminate the
10 discriminatory practices that deny full and equal access for disabled persons, and
11 seeks an award of reasonable statutory attorney fees, litigation expenses and costs.
12      37.   Wherefore Plaintiff asks this Court to preliminarily and permanently
13 enjoin any continuing refusal by Defendant to grant full and equal access to
14 Plaintiff in the ways complained of and to require Defendant to comply forthwith
15 with the applicable statutory requirements relating to access for disabled persons.
16 Such injunctive relief is provided by California Civil Code sections 54.1, 54.2 and
17 55, and other laws.  Plaintiff further requests that the Court award damages
18 pursuant to Civil Code section 54.3 and other law and attorney fees, litigation
19 expenses, and costs pursuant to Civil Code sections 54.3 and 55, Code of Civil
20 Procedure section 1021.5 and other law, all as hereinafter prayed for.
21      38.   **DAMAGES:** As a result of the denial of full and equal access to the
22 described facilities and due to the acts and omissions of Defendant in owning,
23 operating, leasing, constructing, altering, and/or maintaining the subject facilities,
24 Plaintiff has suffered a violation of her civil rights, including but not limited to
25 rights under Civil Code sections 54 and 54.1, and has suffered difficulty,
26 discomfort and embarrassment, and physical, mental and emotional personal
27 injuries, all to her damages per Civil Code section 54.3, including general and
28 statutory damages, and treble damages, as hereinafter stated.  Defendant's actions

and omissions to act constitute discrimination against Plaintiff on the basis that she was and is disabled and unable, because of the policy barriers created and/or maintained by the Defendant in violation of the subject laws, to use the public facilities on a full and equal basis as other persons. The violations have deterred Plaintiff from returning to attempt to patronize the Hyland Inn and will continue to cause her damages each day these barriers to access and policy barriers continue to be present.

39. Further, although it is not necessary for Plaintiff to prove wrongful intent in order to show a violation of California Civil Code sections 54 and 54.1 or of Title III of the ADA (*see Donald v. Café Royale*, 218 Cal. App. 3d 168 (1990)), Defendant's behavior was intentional. Defendant was aware and/or were made aware of their duties to refrain from establishing discriminatory policies against disabled persons, prior to the filing of this complaint. Defendant's establishment of its discriminatory policy to deny and restrict entry to persons with service dogs, and their implementation of such a discriminatory policy against Plaintiff, indicate actual and implied malice toward Plaintiff and conscious disregard for her rights and safety.

40. **FEES AND COSTS:** As a result of Defendant's acts, omissions, and conduct, Plaintiff has been required to incur attorney fees, litigation expenses, and costs as provided by statute, in order to enforce Plaintiff's rights and to enforce provisions of the law protecting access for disabled persons and prohibiting discrimination against disabled persons. Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses, and costs, pursuant to the provisions of Civil Code sections 54.3 and 55. Additionally, Plaintiff's lawsuit is intended to require that Defendant make its facilities accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

41. Plaintiff suffered damages as above described as a result of Defendant's violations. Damages are ongoing based on her deterrence from returning to the Hyland Inn.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

## SECOND CAUSE OF ACTION:
## VIOLATION OF CALIFORNIA LAW INCLUDING: THE UNRUH ACT, CIVIL CODE SECTIONS 51 AND 52, AND THE AMERICANS WITH DISABILITIES ACT AS INCORPORATED BY CIVIL CODE SECTION 51(f)

42. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in Paragraphs 1 through 41 of this Complaint and incorporates them herein as if separately re-pleaded.

43. At all times relevant to this action, the Unruh Civil Rights Act, California Civil Code § 51(b), provided that:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

44. California Civil Code section 52 provides that the discrimination by Defendant against Plaintiff on the basis of her disability constitutes a violation of the general anti-discrimination provisions of sections 51 and 52.

45. Each of Defendant's discriminatory acts or omissions constitutes a separate and distinct violation of California Civil Code section 52, which provides that:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

46. Any violation of the Americans with Disabilities Act of 1990 constitutes a violation of California Civil Code section 51(f), thus independently

justifying an award of damages and injunctive relief pursuant to California law, including Civil Code section 52. Per Civil Code section 51(f), "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

47. The actions and omissions of Defendant as herein alleged constitute a denial of access to and use of the described public facilities by disabled persons who use service dogs within the meaning of California Civil Code sections 51 and 52. As a proximate result of Defendant's action and omissions, Defendant has discriminated against Plaintiff in violation of Civil Code sections 51 and 52, and are responsible for statutory, compensatory and treble damages to Plaintiff, according to proof.

48. **FEES AND COSTS:** As a result of Defendant's acts, omissions and conduct, Plaintiff has been required to incur attorney fees, litigation expenses and costs as provided by statute in order to enforce Plaintiff's rights and to enforce provisions of law protecting access for disabled persons and prohibiting discrimination against disabled persons. Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses and costs pursuant to the provisions of California Civil Code sections 51 and 52. Additionally, Plaintiff's lawsuit is intended to require that Defendant make its facilities and policies accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

49. Plaintiff suffered damages as above-described as a result of Defendant's violations.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

### THIRD CAUSE OF ACTION:
### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990
### (42 USC §§ 12101 *et seq.*)

50. Plaintiff repleads and incorporates by reference, as if fully set forth

again herein, the factual allegations contained in Paragraphs 1 through 49, above, and incorporates them herein by reference as if separately repled hereafter.

51. In 1990 Congress passed the Americans with Disabilities Act after finding that laws were needed to more fully protect "some 43 million Americans with one or more physical or mental disabilities; that historically society has tended to isolate and segregate individuals with disabilities;" that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem"; that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals"; and that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous." 42 U.S.C. § 12101(a).

52. The ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 USC § 12182.

53. Plaintiff is a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

54. The Hyland Inn is a public accommodation within the meaning of Title III of the ADA. 42 U.S.C. § 12181(7)(A).

55. The ADA prohibits, among other types of discrimination, "failure to make reasonable modifications in policies, practices or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities." 42 U.S.C. § 12182(b)(2)(A)(ii).

56. Under the "2010 Revised ADA Requirements: Service Animals," as published by the United States Department of Justice, and distributed by the DOJ's Civil Rights Division, Disability Rights Section, "Generally, title II and title III entities must permit service animals to accompany people with disabilities in all areas where members of the public are allowed to go." ADA 2010 Revised Requirements, www.ada.gov/service -animals-2010.htm  Further,

> **Under the ADA, State and local governments, businesses, and nonprofit organizations that serve the public generally must allow service animals to accompany people with disabilities in all areas of the facility where the public is normally allowed to go.**

*Ibid.*, emphasis in original.

57. Defendant has a policy and practice of denying access to patrons with service animals.

58. On information and belief, as of the date of Plaintiff's most recent visit to the Hyland Inn on or about October 15, 2021, Defendant continues to deny full and equal access to Plaintiff and to discriminate against Plaintiff on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of Defendant's premises, in violation of the ADA.

59. In passing the Americans with Disabilities Act of 1990 (hereinafter "ADA"), Congress stated as its purpose:
> It is the purpose of this Act
>
> (1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;
>
> (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;
>
> (3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and
>
> (4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 USC § 12101(b).

60. As part of the ADA, Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (42 USC § 12181 *et seq.*). The subject property and facility is one of the "private entities" which are considered "public accommodations" for purposes of this title, which includes but is not limited to any "inn, hotel, motel, or other place of lodging." 42 USC § 12181(7)(A).

61. The ADA states that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182. The specific prohibitions against discrimination include, but are not limited to the following:

§ 12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

§ 12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

§ 12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

§ 12182(b)(2)(A)(iv): "a failure to remove architectural barriers, and

communication barriers that are structural in nature, in existing facilities... where such removal is readily achievable;"

§ 12182(b)(2)(A)(v): "where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable."

The acts and omissions of Defendant set forth herein were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq*.

62. The removal of each of the policy barriers complained of by Plaintiff as hereinabove alleged, were at all times herein mentioned "readily achievable" under the standards of sections 12181 and 12182 of the ADA. As noted hereinabove, removal of each and every one of the policy barriers complained of herein were already required under California law. In the event that removal of any barrier is found to be "not readily achievable," Defendant still violated the ADA, per section 12182(b)(2)(A)(v) by failing to provide all goods, services, privileges, advantages and accommodations through alternative methods that were "readily achievable."

63. On information and belief, as of the dates of Plaintiff's encounters at the premises and as of the filing of this Complaint, Defendant's actions, policies, and physical premises have denied and continue to deny full and equal access to Plaintiff and to other disabled persons who work with service dogs, which violates Plaintiff's right to full and equal access and which discriminates against Plaintiff on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of 42 U.S.C. sections 12182 and 12183 of the ADA.

64. Defendant's actions continue to deny Plaintiff's rights to full and equal access by deterring Plaintiff from patronizing the Hyland Inn and discriminated and

continue to discriminate against her on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of Defendant's goods, services, facilities, privileges, advantages and accommodations, in violation of section 12182 of the ADA.  42 U.S.C. § 12182.

65. Pursuant to the Americans with Disabilities Act, 42 U.S.C. sections 12188 *et seq.,* Plaintiff is entitled to the remedies and procedures set forth in section 204(a) of the Civil Rights Act of 1964, 42 USC 2000(a)-3(a), as Plaintiff is being subjected to discrimination on the basis of her disabilities in violation of sections 12182 and 12183 of this title.  On information and belief, Defendant has continued to violate the law and deny the rights of Plaintiff and other disabled persons to "full and equal" access to this public accommodation since on or before Plaintiff's encounters.  Pursuant to section 12188(a)(2)

> [i]n cases of violations of § 12182(b)(2)(A)(iv) and § 12183(a)... injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this title.  Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this title.

66. Plaintiff seeks relief pursuant to remedies set forth in section 204(a) of the Civil Rights Act of 1964 (42 USC 2000(a)-3(a)), and pursuant to Federal Regulations adopted to implement the Americans with Disabilities Act of 1990. Plaintiff is a qualified disabled person for purposes of section 12188(a) of the ADA who is being subjected to discrimination on the basis of disability in violation of Title III and who has reasonable grounds for believing she will be subjected to such discrimination each time that she may use the property and premises, or attempt to patronize the Hyland Inn, in light of Defendant's policy barriers.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

## **PRAYER**

Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint.  Plaintiff has suffered and will continue to suffer

irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendant as alleged herein, unless Plaintiff is granted the relief she requests.  Plaintiff and Defendant have an actual controversy and opposing legal positions as to Defendant's violations of the laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of California.

WHEREFORE, Plaintiff Jessica Kramer prays for judgment and the following specific relief against Defendant:

1. An order enjoining Defendant, its agents, officials, employees, and all persons acting in concert with them:

    a. From continuing the unlawful acts, conditions, and practices described in this Complaint;

    b. To modify their policies and practices to accommodate service dog users in conformity with federal and state law, and to advise Plaintiff that her service dog will not be excluded should she desire to enter and use the services of the Hyland Inn;

    c. That the Court issue preliminary and permanent injunction directing Defendant as current owners, operators, lessors, and/or lessees and/or their agents of the subject property and premises to modify the above described property, premises, policies and related policies and practices to provide full and equal access to all persons, including persons with disabilities; and issue a preliminary and permanent injunction pursuant to ADA section 12188(a) and state law directing Defendant to provide facilities usable by Plaintiff and similarly situated persons with disabilities, and which provide full and equal access, as required by law, and to maintain such accessible facilities once they are provided and to train Defendant's employees and agents in how to recognize disabled persons and accommodate their rights

and needs;

  d. An order retaining jurisdiction of this case until Defendant have fully complied with the orders of this Court, and there is a reasonable assurance that Defendant will continue to comply in the future absent continuing jurisdiction;

2. An award to Plaintiff of statutory, actual, general, treble, and punitive damages in amounts within the jurisdiction of the Court, all according to proof;

3. An award of civil penalty as against Defendant under California Penal Code § 365.5(c);

4. An award to Plaintiff pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 794a, California Civil Code §§ 52 and 54.3, California Code of Civil Procedure § 1021.5, and as otherwise permitted by law, of the costs of this suit and reasonable attorneys' fees and litigation expenses;

5. An award of prejudgment interest pursuant to Civil Code § 3291;

6. Interest on monetary awards as permitted by law; and

7. Grant such other and further relief as this Court may deem just and proper.

Date: May 6, 2022        REIN & CLEFTON
               */s/ Aaron M. Clefton*
              By AARON M. CLEFTON, Esq.
              Attorneys for Plaintiff
              JESSICA KRAMER

## JURY DEMAND

Plaintiff hereby demands a trial by jury for all claims for which a jury is permitted.

Date: May 6, 2022        REIN & CLEFTON
               */s/ Aaron M. Clefton*
              By AARON M. CLEFTON, Esq.
              Attorneys for Plaintiff
              JESSICA KRAMER